**KOLLER LAW LLC**
David M. Koller, Esq. (Pa 90119)
Jordan D. Santo, Esq. (Pa 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANK RAMOS,**<br>**Plaintiff,** | : | **Civil Action No. 26-7893** |
| **v.** | : | **Complaint and Jury Demand** |
| **CIOCCA HYUNDAI OF QUAKERTOWN, INC.,**<br>**Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Frank Ramos (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Ciocca Hundai of Quakertown, Inc. (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and Section 1981 of the Civil Rights Act ("Section 1981"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Bethlehem, PA.
3. Upon information and belief, Defendant Ciocca Hyundai of Quakertown, Inc. is car dealership with a location and corporate headquarters at 550 S West End Boulevard,

Quakertown, PA 18951.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original

jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
12. Plaintiff exhausted his administrative remedies under Title VII, the ADA and the PHRA.
13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on September 11, 2025, alleging race discrimination and retaliation against Defendant.
14. The Charge was assigned a Charge Number 530-2025-09808 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").
15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated July 16, 2026.
16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.
17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his Title VII and ADA claims, and more than one (1) year after filing the Charge but within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.
18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
20. Plaintiff is Hispanic.
21. Plaintiff has record of the serious health condition of a heart murmur, which is considered to be a disability under the ADA and the PHRA.
22. The major life activities affected by Plaintiff's recorded disability includes, but is not limited to, proper cardiac function.
23. On May 29, 2023, Defendant hired Plaintiff in the position of Automotive Technician.
24. Plaintiff was well qualified for his position and performed well.

## DEFENDANT SUBJECTED PLAINTIFF TO DISPARATE TREATMENT BASED ON HIS RACE

25. Plaintiff was one of two (2) Hispanic Automotive Technicians at Defendant.
26. Throughout Plaintiff's employment, Defendant subjected Plaintiff to disparate treatment.
27. Mike Muir (Caucasian), Service Manager, denied Plaintiff's vacation request under the pretense that he could not approve vacation requests that included the last week of any given month due to company policy.
28. However, Muir would approve Tyler Last Name Unknown ("LNU") (Caucasian), Automotive Technician, and Austin's LNU (Caucasian), Automotive Technician, vacation requests even when they were made under the same exact circumstances as when Plaintiff submitted his requests.
29. In or around spring 2024, Plaintiff wore white shoes to work.
30. Muir reprimanded Plaintiff for wearing white shoes to work for being out of uniform.

31. However, Lexie LNU (Caucasian), Service Advisor, Cassidy LNU (Caucasian), Service Advisor, and Devon LNU (Caucasian), Service Advisor, frequently violated Defendant's uniform policy by wearing leggings and yoga pants.

**PLAINTIFF COMPLAINED ABOUT THE RACIALLY DISPARATE TREATMENT**

32. Plaintiff complained about this racially disparate treatment to Defendant.

33. However, Defendant did not address Plaintiff's complaint.

**DEFENDANT MOVED PLAINTIFF TO THE SHOP WITHOUT AIR CONDITIONING**

34. In or around May 2025, Defendant moved Plaintiff to a different shop without air conditioning where he only had a small fan that was not capable of cooling the work station.

35. The small fan had been brought in by the other Hispanic Automotive Technician who allowed him to use it while he was out on leave due to injury.

36. Defendant claimed that this was due to seniority.

37. However, there were Caucasian Automotive Technicians who had less seniority than Plaintiff, but were not moved to the shop without air conditioning.

**PLAINTIFF REQUESTED AND WAS APPROVED TO WEAR SHORTS TO WORK**

38. On June 23, 2025, Plaintiff asked Muir if he could wear shorts to work the following day due to the impending heatwave.

39. Importantly it was approximately 97 degrees outside, with a feel-like temperature of 107 degrees on June 24, 2025.

40. On June 23, 2026, Muir notified Plaintiff that he could wear shorts to work the following day on June 24, 2025

**PLAINTIFF WORE SHIRTS TO WORK, BUT WAS TOLD THAT HE COULD NOT WEAR THEM**

41. On June 24, 2025, Plaintiff came to work with shorts on.

42. Marc Mattera (Caucasian), General Manager, had Muir go to Plaintiff and tell him that he could not wear shorts at work.

43. Plaintiff complained to Muir that he had given him approval to wear shorts to work due to the heat.

**PLAINTIFF REQUESTED A REASONABLE ACCOMMODATION TO WEAR SHORTS TO WORK**

44. Plaintiff proceeded to speak with Yvette Durecut (Hispanic), Employee Relations Manager, about requesting a reasonable accommodation to wear shorts to work due to his disability.

45. Durecut informed Plaintiff that he could apply for a reasonable accommodation.

46. However, Durecut told Plaintiff that he could not report to work until his accommodation request was approved.

47. On or about June 26, 2025, Plaintiff had his reasonable accommodation paperwork completed at LVHN ExpressCare – Airport Road and submitted it to New York Life, Defendant's third-party benefits administrator.

**DURECUT DENIED PLAINTIFF'S ACCOMMODATION REQUEST**

48. On or about July 2, 2025, Durecut denied Plaintiff's accommodation request allegedly due to the temperature in the shop not being hot enough to warrant it.

49. On July 3, 2025, Plaintiff responded that his job duties frequently required him to be exposed to significantly higher temperatures.

**PLAINTIFF CONTACTED DEFENDANT'S THIRD-PARTY BENEFITS ADMINISTRATOR REGARDING HIS ACCOMMODATION REQUEST AND REMAINED ON THE LEAVE OF ABSENCE**

50. Durecut instructed Plaintiff to contact New York Life regarding his reasonable accommodation request.

51. Plaintiff followed Durecut's instructions and he remained on his leave of absence.

**THE VOCATIONAL COACH FROM NEW YORK LIFE INFORMED PLAINTIFF THAT SHE DID NOT NEED ANY ADDITIONAL DOCUMENTS REGARDING HIS ACCOMMODATION REQUEST**

52. On July 7, 2025, Shay LNU, Vocational Coach from New York Life, called Plaintiff regarding his accommodation request.

53. Plaintiff missed Shay's call, but she left a voicemail stating that she was available to speak July 9 and July 12, 2025.

54. Shay also stated that she did not require any additional documents regarding his accommodation request.

**PLAINTIFF NOTIFIED DURECUT THAT HE HAD SPOKEN TO SHAY AND THAT DEFENDANT SHOULD NOTIFY HIM OF THE APPROVAL OF HIS ACCOMODATION REQUEST**

55. On July 8, 2025, Durecut emailed Plaintiff that he had exhausted his paid-time off ("PTO") and to contact her by July 9, 2025.

56. On July 9, 2025, Plaintiff spoke with Shay regarding his accommodation request.

57. Shay informed Plaintiff that she did not need any additional documents and that Defendant should notify him regarding the approval of his accommodation request.

58. Later that day, Plaintiff notified Durecut that he had just spoken to Shay and that she did not need any additional documents and that Human Resources should notify him regarding his accommodation request.

**DEFENDANT TERMINATED PLAINTIFF**

59. On July 10, 2025, Durecut emailed Plaintiff that he was terminated effective July 9, 2025, for alleged no call no shows on July 8 and July 9, 2025 resulting in alleged job abandonment.
60. Plaintiff did not commit any no call no shows.
61. Defendant discriminated against Plaintiff due to his and disability and retaliated against him for complaining of the aforementioned discrimination and for requesting a reasonable accommodation in violation of the ADA and the PHRA.
62. Defendant discriminated against Plaintiff due to his and race/ethnicity and retaliated against him for complaining of the aforementioned discrimination in violation of Title VII, the PHRA, and Sectio 1981.
63. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – RACE/ETHNICITY DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

64. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
65. Plaintiff is a member of a protected class in that he is Hispanic.
66. Plaintiff was qualified to perform the job for which he was hired.
67. Plaintiff suffered adverse job actions, including, but not limited to constructive discharge.
68. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.
69. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.
70. Defendant discriminated against Plaintiff on the basis of his protected class.

71. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

72. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

73. Defendant's conduct was willful or performed with reckless disregard to his federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT II – DISCRIMINATION BASED ON RACE/ETHNICITY**
**PENNSYLVANIA HUMAN RELATIONS ACT**

74. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

75. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his protected class (Hispanic).

76. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – RACE/ETHNICITY DISCRIMINATION**
**SECTION 1981 OF THE CIVIL RIGHTS ACT**

77. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

78. Plaintiff is a member of protected classes in that he is Hispanic.

79. Plaintiff was qualified to perform the job for which he was hired.

80. Plaintiff suffered adverse job actions, including, but not limited to termination.

81. Similarly situated people outside of Plaintiff's protected class were treated more

favorably than Plaintiff.

82. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

83. Defendant intentionally discriminated against Plaintiff on the basis of his protected class.

84. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

85. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

86. Defendant's conduct was willful or performed with reckless disregard to his federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

87. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

88. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

89. Plaintiff was qualified to perform the job.

90. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

91. Circumstances indicated that Plaintiff's disability was the reason for the adverse

employment action.

92. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

93. Plaintiff's disability motivated Defendant's decision to take adverse actions against Plaintiff.

94. The purported reason for Defendant's decision is pretextual.

95. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

96. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

97. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

98. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT V – DISABILITY DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

99. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

100. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

101. Plaintiff was qualified to perform the job.

102. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

103. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

104. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

105. Plaintiff's disability motivated Defendant's decision to terminate Plaintiff.

106. The purported reason for Defendant's decision is pretextual.

107. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

108. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

109. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VI – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

110. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

111. Plaintiff engaged in activity protected by Title VII.

112. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

113. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT VII – RETALIATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

114. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

115. Plaintiff engaged in activity protected by the ADA.

116. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

117. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT VIII – RETALIATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

118. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

119. Plaintiff engaged in activity protected by PHRA.

120. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

121. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT IX – RETALIATION**
**SECTION 1981 OF THE CIVIL RIGHTS ACT**

122. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

123. Plaintiff engaged in activity protected by Section 1981.

124. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

125. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Frank Ramos, requests that the Court grant him the following relief against Defendant:

(a) Damages for past and future wage loss;

(b) Compensatory damages for other economic and non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c) Punitive damages;

(d) Reasonable attorneys' fees;

(e) Recoverable costs;

(f) Pre and post judgment interest;

(g) An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(h) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(i) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: October 14, 2026

**By:** ***/s/David M. Koller***

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*